# U.S. District Court
# Eastern District of Missouri (St. Louis)
# CIVIL DOCKET FOR CASE #: <u>4:16−cv−00626−CDP</u>

Henley v. USA

Assigned to: Honorable Catherine D. Perry

Related Case: 4:11−cr−00246−CDP−4

Cause: 28:2255 Motion to Vacate / Correct Illegal Sentenc

Date Filed: 05/03/2016

Date Terminated: 04/18/2018

Jury Demand: None

Nature of Suit: 510 Prisoner: Vacate Sentence

Jurisdiction: U.S. Government Defendant

**Petitioner**

**Dominic Henley**                 represented by    **Jeremy B. Gordon**
JEREMY GORDON, PLLC
1848 Lone Star Rd.
Suite 106
Mansfield, TX 76063
972−483−4865
Fax: 972−584−9230
Email: jeremy@gordondefense.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*
*Bar Status: Phv*

V.

**Respondent**

**USA**                 represented by    **Sirena M. Wissler**
OFFICE OF U.S. ATTORNEY
111 S. Tenth Street
20th Floor
St. Louis, MO 63102
314−539−7670
Fax: 314−539−2312
Email: sirena.wissler@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*
*Bar Status: Gov*

Email All Attorneys
(will not send to terminated parties)

Email All Attorneys and Additional Recipients
(will not send to terminated parties)

| Date Filed | # | Page | Docket Text |
|------------|---|------|-------------|

| 05/03/2016 | 1 | | MOTION to Vacate, Set Aside or Correct Sentence by Petitioner Dominic Henley. (Attachments: # 1 Memorandum of Points and Authorities in Support of Motion to Vacate, # 2 Declaration of Dominic Henley – Unsigned)(JWD) Modified on 5/4/2016 to indicate that the Declaration is unsigned. (CBL). (Entered: 05/03/2016) |
|---|---|---|---|
| 05/03/2016 | | | Case Opening Notification: Judge Assigned: Honorable Catherine D. Perry. (JWD) (Entered: 05/03/2016) |
| 05/04/2016 | 2 | | MOTION for Leave to File Supplemental Memorandum of Law in Support of 2255 Motion by Petitioner Dominic Henley. (Gordon, Jeremy) (Entered: 05/04/2016) |
| 05/04/2016 | 3 | | NOTICE Filing Unsigned Amended Declaration: by Petitioner Dominic Henley re 1 MOTION to Vacate, Set Aside or Correct Sentence (Attachments: # 1 Unsigned Amended Declaration of Dominic Henley)(Gordon, Jeremy) (Entered: 05/04/2016) |
| 05/16/2016 | 4 | | CASE MANAGEMENT ORDER. IT IS HEREBY ORDERED that Movant's request for leave to file a supplemental memorandum of law 2 is GRANTED. The supplemental memorandum must be filed no later than June 4, 2016. IT IS FURTHER ORDERED that the following provisions shall apply in this case, and will be modified only upon a showing of exceptional circumstances: This case has been assigned to Track 4 (Administrative). Respondent shall show cause, in writing and within forty–five (45) days of the filing of the supplemental memorandum, why the relief requested in the instant motion to vacate should not be granted. Signed by District Judge Catherine D. Perry on 5/16/2016. (CBL) (Entered: 05/16/2016) |
| 05/17/2016 | 5 | | MOTION to Unseal Document *Motion for Access to Transcripts from Ex Parte and/or Sealed Hearings* by Respondent USA. (Wissler, Sirena) (Entered: 05/17/2016) |
| 05/17/2016 | 6 | | RESPONSE to Motion re 5 MOTION to Unseal Document *Motion for Access to Transcripts from Ex Parte and/or Sealed Hearings* filed by Petitioner Dominic Henley. (Gordon, Jeremy) (Entered: 05/17/2016) |
| 05/17/2016 | 7 | | MOTION to Unseal Document *All Filings and the Hearing Transcript Related to the March 8, 2012, Conflict Hearing Before the Honorable Frederick R. Buckles (Ret.), U.S. Magistrate Judge.* by Petitioner Dominic Henley. (Gordon, Jeremy) (Entered: 05/17/2016) |
| 05/18/2016 | 8 | | ORDER. (See Full Order.) IT IS HEREBY ORDERED that the motions to unseal [ 5 , 7 ] are granted. IT IS FURTHER ORDERED that Clerk of Court shall remove from seal the items listed as docket entries numbered 571, 577 and 581 in Case No. 4:11CR246 CDP and place them in the public docket; to provide copies of those documents to both counsel of record in this case; and, when the parties properly attach and pay for any transcripts, to provide the transcripts and file them in the public file in the criminal case. IT IS FURTHER ORDERED that the Clerk of Court shall file a copy of this order in the criminal case, 4:11CR246 CDP. Signed by District Judge Catherine D. Perry on 5/18/2016. (Order filed and Documents unsealed in 4:11CR246 CDP–4. Documents provided to AUSA Sirena Wissler via interoffice mail and Attorney Jeremy B. Gordon via email this date.)(CBL) (Entered: 05/18/2016) |

| 06/02/2016 | 9 | | MOTION for Extension of Time to File *Supplemental Memorandum* ;Extension to file the following: Supplemental Memorandum ;Proposed extension date June 10, 2016 by Petitioner Dominic Henley. (Gordon, Jeremy) (Entered: 06/02/2016) |
|---|---|---|---|
| 06/06/2016 | 10 | | Docket Text ORDER: Re: 9 MOTION for Extension of Time to File *Supplemental Memorandum* ;Proposed extension date June 10, 2016 by Petitioner Dominic Henley. ORDERED: GRANTED. Signed by District Judge Catherine D. Perry on 6/6/2016. (CBL) (Entered: 06/06/2016) |
| 06/10/2016 | 11 | | MEMORANDUM in Support of Motion re 1 MOTION to Vacate, Set Aside or Correct Sentence *(Supplement)* filed by Petitioner Dominic Henley. (Gordon, Jeremy) (Entered: 06/10/2016) |
| 07/20/2016 | 12 | | MOTION for Extension of Time to File Response/Reply as to 1 MOTION to Vacate, Set Aside or Correct Sentence by Respondent USA. (Wissler, Sirena) (Entered: 07/20/2016) |
| 07/21/2016 | 13 | | Docket Text ORDER: Re: 12 MOTION for Extension of Time to File Response/Reply as to 1 MOTION to Vacate, Set Aside or Correct Sentence by Respondent USA. ORDERED: GRANTED. Signed by District Judge Catherine D. Perry on 7/21/2016. (CBL) (Entered: 07/21/2016) |
| 08/03/2016 | 14 | | MOTION for Leave to File in Excess of Page Limitation by Respondent USA. (Wissler, Sirena) (Entered: 08/03/2016) |
| 08/03/2016 | 15 | | Docket Text ORDER: Re: 14 MOTION for Leave to File in Excess of Page Limitation by Respondent USA. ORDERED: GRANTED. Signed by District Judge Catherine D. Perry on 8/3/2016. (CBL) (Entered: 08/03/2016) |
| 08/08/2016 | 16 | | RESPONSE to Motion re 1 MOTION to Vacate, Set Aside or Correct Sentence filed by Respondent USA. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Wissler, Sirena) (Entered: 08/08/2016) |
| 08/11/2016 | 17 | | MOTION for Extension of Time to File Response/Reply as to 16 Response to Motion by Petitioner Dominic Henley. (Gordon, Jeremy) (Entered: 08/11/2016) |
| 08/12/2016 | 18 | | Docket Text ORDER: Re: 17 MOTION for Extension of Time to File Response/Reply as to 16 Response to Motion by Petitioner Dominic Henley; ORDERED GRANTED. (Response/Reply to Court due by 9/25/2016.) Signed by District Judge Catherine D. Perry on 8/12/16. (EAB) (Entered: 08/12/2016) |
| 09/01/2016 | 19 | | REPLY to Response to Motion re 1 MOTION to Vacate, Set Aside or Correct Sentence filed by Petitioner Dominic Henley. (Gordon, Jeremy) (Entered: 09/01/2016) |
| 04/18/2018 | 20 | 5 | MEMORANDUM AND ORDER – IT IS HEREBY ORDERED that Dominic Henley's motion to vacate, set aside or correct his sentence under 28 U.S.C. Section 2255 1 is denied. IT IS FURTHER ORDERED that this Court will not issue a certificate of appealability, as Henley has not made a substantial showing of the denial of a federal constitutional right. Signed by District Judge Catherine D. Perry on April 18, 2018. (MCB) (Entered: 04/18/2018) |
| 04/18/2018 | 21 | 30 | JUDGMENT – IT IS HEREBY ORDERED that Domenic Henley's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is denied. IT IS FURTHER ORDERED that this Court will not issue a certificate of |

| | | | |
|---|---|---|---|
| | | | appealability because movant has not made a substantial showing of a denial of any constitutional right. Signed by District Judge Catherine D. Perry on April 18, 2018. (MCB) (Entered: 04/18/2018) |
| 04/19/2018 | 22 | | ORDER – IT IS HEREBY ORDERED that the correctly spelled name "Dominic Henley" is substituted nunc pro tunc for the mispelled name "Domenic Henley" in the Order and Memorandum (ECF No. 20) and Judgment (ECF No. 21) that were entered on April 18, 2018. Signed by District Judge Catherine D. Perry on April 19, 2018. (MCB) (Entered: 04/19/2018) |
| 06/15/2018 | 23 | 31 | NOTICE OF APPEAL as to 20 Memorandum & Order, by Petitioner Dominic Henley. Filing fee $ 505, receipt number 0865–6592314. (Entered: 06/15/2018) |
| 06/18/2018 | 24 | 33 | NOTIFICATION OF APPEAL AND NOA SUPPLEMENT by clerk to USCA regarding 20 Memorandum & Order, 21 Judgment – (Case),. Notice of Appeal filed on 6/15/18 by Petitioner Dominic Henley. NOTIFICATION TO COUNSEL AND PRO SE PARTY: FILE REQUEST FOR TRANSCRIPT WITH DISTRICT COURT CLERKS OFFICE.(BAK) (Entered: 06/18/2018) |

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

DOMENIC HENLEY,                )
                              )
     Movant,              )
                              )
v.                            )          No. 4:16 CV 626 CDP
                              )
UNITED STATES OF AMERICA,      )
                              )
     Respondent.          )

## <u>MEMORANDUM AND ORDER</u>

Dominic Henley seeks to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.  Henley was convicted by a jury of racketeering conspiracy and one count of violent crime in aid of racketeering – conspiracy to commit murder.  Case No. 4:11CR246 CDP.  He was acquitted of one count of violent crime in aid of racketeering – murder and one count of discharge of a firearm in furtherance of a violent crime.  Henley was sentenced to an aggregate term of 204 months imprisonment.  Henley appealed, and the Eighth Circuit Court of Appeals affirmed his conviction and sentence.  *United States v. Henley*, 766 F.3d 893, 908 (8th Cir. 2014).   Henley petitioned the United States Supreme Court for certiorari, which was denied on May 4, 2015.

Henley then filed this § 2255 motion, alleging that his retained counsel rendered ineffective assistance of counsel by failing to adequately advise him of

counsel's conflict of interest such that Henley's waiver of conflict-free representation was not knowing and voluntary.

Henley's ineffective assistance of counsel claim fails because he knowingly and voluntarily waived any potential conflict of interest counsel may have had in representing him. Henley repeatedly insisted his retained counsel represent him, despite being fully apprised by counsel and the Court of the potential risks posed by counsel's potential conflict of interest. The Court granted Henley's request to be represented by the counsel of his choice, and he cannot be heard to complain about that decision now. Moreover, counsel mounted a vigorous defense, securing an acquittal for Henley on two charges, one of which carried a mandatory life sentence. As such, Henley's claims of ineffective assistance of counsel are conclusively refuted by the trial record. The evidence against him was very strong, as set forth in great detail in the appellate opinion affirming his conviction and sentence. I will deny Henley's motion without an evidentiary hearing for the reasons that follow.

### Relevant Background Facts

The relevant background facts relating to Henley's claim are not disputed. After he was arrested, Henley retained attorney Donnell Smith to represent him. Smith represented Henley throughout the trial and appeal of the underlying criminal case. On February 29, 2012, the Assistant United States Attorney filed an

*ex parte* motion for inquiry into a potential conflict of interest. [Doc. # 571 in Case No. 4:11CR246 CDP]. The motion stated that Smith had a possible familial relationship with a member of the rival motorcycle gang Outcast, whose members Henley was accused of conspiring to kill on January 29, 2011. The motion was referred to United States Magistrate Judge Frederick R. Buckles.

Judge Buckles immediately held a hearing on the motion on March 2, 2012. [Doc. # 577 in Case No. 4:11CR246 CDP]. At the hearing, Judge Buckles explained that an informant contacted the FBI and told the FBI agent that Smith was the brother of the president of the Outcast Motorcycle Club, whose members Henley allegedly conspired to kill. [Doc. # 16-1]. Judge Buckles stated that this created "a potential conflict of interest if Mr. Smith is representing Mr. Henley, who is accused of attempted murder of associates and perhaps even Mr. Smith's brother himself." [*Id.* at 3]. Judge Buckles questioned Smith about his brother. Smith reported that he had a brother who rode motorcycles and his brother's girlfriend was his secretary. Smith's secretary confirmed that Smith's brother was indeed a member of Outcast and that his brother's motorcycle nickname was "St. Louis Red." [*Id.* at 4-5]. After Smith admitted that he was on speaking terms with his brother, Judge Buckles told Smith that "it's imperative that you let Mr. Henley know this." [*Id.* at 5].

Judge Buckles ordered that Henley be brought in for the hearing so that Smith could discuss the issue with him.  Judge Buckles then took a recess to allow Smith and Henley to confer.  The recess lasted almost an hour, and when courtroom proceedings were reconvened Henley was brought into the courtroom.  At that time, Judge Buckles explained to Henley that "it was reported that Mr. Smith, your attorney, had a brother – has a brother who is member of the Outcast Motorcycle Club and, in fact, it was reported that he is the president of that club."  [Doc. #16-1 at 9].  Judge Buckles told Henley that the situation "creates a potential conflict of interest" because "there are allegations in the indictment that you and other members of the Wheels of Soul conspired to murder members of the Outcast Motorcycle Club."  [*Id.* at 10].  After pointing out that Henley (who has a master's degree in international business) was "an intelligent and educated man," Judge Buckles outlined the potential conflict of interest that had arisen by virtue of Smith's brother's membership in Outcast as follows:

> Mr. Smith owes you or any client that he has a duty of loyalty and representation to you.  And his sole duty ought to be your interests in this case and his interests ought to be of – the only concern of him in this case.

> And he could find himself in a position where he may be having to try and gather information about that which he used in your defense about these other members of this other club, including his own brother.  And he might find himself in a position where he's having to attack the credibility of those persons by bringing up, you know, information that he knows about these other persons.

> And, you know, he could be in a situation where he has loyalties, you know, blood loyalties to family members, but then he has loyalties to you. And what if these two loyalties are in conflict? Is that always going to be in the back of his mind or is he going to – you know, how is going to deal with that?

[*Id.* at 11]. To provide Smith and Henley sufficient opportunity to fully discuss the issue, Judge Buckles continued the matter for further hearing on March 8, 2012. Before recess was called, Henley asked Judge Buckles what would happen if "after getting all the rest of the information needed and going over it [] I made a decision to keep my attorney." [*Id.* at 15]. Henley also asked if Judge Buckles would make the decision if his "attorney decided that he did not want to proceed." [*Id.*]. Judge Buckles responded that the ultimate decision was his, explaining that "I can find that there are certain circumstances that the conflict is so great that it can't be waived. Even though you think you can waive it and Mr. Smith thinks he can waive it, I may ultimately have to decide whether it's so severe that it – it's the kind of thing that can't be waived." [*Id.* at 16-17]. Judge Buckles advised Henley that if he decided that Smith could not continue to represent him, he could hire a new lawyer or seek appointed counsel if he lacked sufficient resources to do so. [*Id.* at 16].

Following the hearing, Smith and Henley engaged in "lengthy conversations" about the potential conflict of interest. [Aff. of Donnell Smith, Doc.# 16-2]. Although Smith initially decided to withdraw from representing

Henley, he did not do so because Henley insisted he remain on the case.  [*Id.*].

Henley explained that "if the government wanted [Smith] off, [Henley] wanted

[him] on."  [*Id.*].

At the continuation of the hearing on March 8, 2012, Smith announced that

he had conducted some additional investigation and acquired some "information

that I'm sharing with the Court [and] I've also shared with my client."  [Doc. #16-3

at 5].  Smith stated that his brother became the president of Outcast "just before the

events of January 2011" and was present at the January 29, 2011 event where

Henley and other Wheels of Soul members allegedly conspired to murder Outcast

members.  [*Id.* at 5-6].  Smith confirmed that Henley did not know his brother and

that his brother did not know Henley.  [*Id.* at 5].  Judge Buckles then asked Smith

whether he understood "how there could be the appearance of a potential conflict

of interest here" which required the Court to conduct an inquiry.  [*Id.* at 6].  Smith

indicated that he understood and had explained it to Henley.  [*Id.*].

Judge Buckles then proceeded to recite the case law as it pertains to potential

conflicts of interest, first recognizing the "presumption in favor of [Henley's]

counsel of choice."  [*Id.* at 7].  As Judge Buckles explained, the "presumption may

be overcome not only by a demonstration of actual conflict but by a showing of

serious potential for conflict."  [*Id.*]  Judge Buckles then asked Smith if he wanted

to continue representing Henley in the case, and he responded in the affirmative.

6

[*Id.* at 9]. Smith then told the Court that "Mr. Henley and I have gone through this in great detail and given it a considerable amount of deliberation, and he also wishes that I continue to represent him." [*Id.* at 10].

Judge Buckles then had Henley placed under oath and questioned him. Henley told Judge Buckles that he was 34 years old and had a master's degree in international business. [*Id.* at 10-11]. His last job was as a supervisor for a steel foundry. [*Id.* at 11]. Henley confirmed that he was fully literate and not under the influence of medication or alcohol. [*Id.*]. After Smith indicated that he had no reason to doubt Henley's competency, Judge Buckles found Henley competent to proceed and advised him of his right to consult with his attorney before answering any question. [*Id.* at 12]. Judge Buckles explained again that the purpose of the hearing was to conduct an inquiry into "at least the appearance of a potential conflict of interest" created by "the status of Mr. Smith's brother." [*Id.* at 12]. Henley acknowledged that he understood the purpose of the hearing as well as the fact that he faced substantial penalties, including a term of life imprisonment, if he were convicted. [*Id.*at 12]. Judge Buckles then engaged in the following lengthy colloquy with Henley:

> THE COURT: All right. Now, we have a situation, again, where it would appear to me – and again this is conjecture. But that's what we are dealing with, conjecture here. There could be the possibility that members of the group of which Mr. Smith's brother is a member and president, as he's confirmed now, could be called as witnesses in this case. There's even the potential that Mr. Smith's brother could be called as a witness in this case,

7

okay, in which case, Mr. Smith would have to cross-examine him, and if he is saying things that are adverse to your interest, to try and attack his credibility and destroy his credibility. You know, that could be a difficult situation. Here is a person who is going to be faced with a situation of trying to make his brother look as bad as he could possibly make him look in carrying out the duties that he has to do in defending you. Okay.

And there's the possibility that this is always going to be in the back of his mind. Okay. "How am I going to do this? You know, what's going to happen when I sit down with the rest of my family at the dinner table and, you know, have to deal with what I had to do to my brother?" Okay. "Am I going to be able to deal with that in the future?"

It's also probably going to be in your mind. Okay. "Did he really do everything he could do?" Okay. If down the line things don't work out, you know, in spite of Mr. Smith's best ability and defending and representing you, if you are nevertheless convicted in this case and say if you are sentenced to a term of life imprisonment, okay, you are going to have a long time to sit and think about these things. Okay.

And I guarantee you, you will be thinking about them if that happens in those circumstances. You are going to be sitting there in some federal prison and thinking about why you are here. You are going to be sitting there. And this is what people in prison do. Okay. You are going to be sitting over there. You are going to be pouring over the transcripts of the trial and all of these proceedings page by page, and you are going to be looking and going to be saying, "Hmm, I wonder why he didn't ask this question or I wonder why he didn't do this or I wonder why he didn't look into this." Okay.

And you are going to be talking to other people there, other prisoners. Because that's what people do. And other people are going to say, "Hey, man, look here, your lawyer didn't do what they should have done." Okay. You know, "He should have done this, he should have done that." And you are going to be thinking, well, you know, "I wonder why he didn't do that." Or, you know – and that – that's what happens. Because I see that every day. I deal with that every day. People are sitting there wondering, "Why am I here?" And one of the things they look at why I'm there is my lawyer. You know, "My lawyer put me here."

8

Okay.  And so they – they tend to, you know, pick over what their lawyer did over and over and over in their mind.  Now, you are going to be faced with a situation – and again, this is all speculation and conjecture.  You may—at the end of this trial you may walk out the door a free man.  You know, that's – you know, but what I have to concern myself here with is the kind of potential conflicts that can happen here.  Okay.

What's going to happen when these other lawyers and these other defendants find out about this situation.  Okay.  These other lawyers are going to be, "Whoa, I'm not so sure."  You know, "I found this out.  I've conducted some investigation.  I've come up with some good information.  But I am not sure I want to share it with him."  Okay.  And especially, "Look, he has a person sitting in his office who is the girlfriend of this person who's got access to all of this discovery that's been provided by the government who knows all this stuff and, you know, it's like having a spy in the camp."

And these people might say, "I'm not saying nothing to him.  I'm not going to share any beneficial information that I have with him at all.  I don't want any part of this."  Okay.  Because that – that's – the common person's reaction is going to be "this is crazy."  Okay.  You know, "His brother is a victim in this case.  He's one of the people that they were going to kill.  That's crazy to say he could represent him."

I'm sitting here thinking of this myself.  If you would have come into this Court and said, "I can't afford to have a lawyer, I don't have the money to hire a lawyer, I would like the Court to appoint someone to represent me."  And if I said, "That's fine, Mr. Henley.  It appears you don't have the money to hire a lawyer.  I can appoint someone to represent you.  And, here, I'm going to appoint this lawyer, Donnell Smith, to represent you.  But here, here's what you ought to know.  I am going to appoint him to represent you, but his brother is one of the people you were accused of trying to kill.  But that's okay.  That won't be a problem."  You would tell me I was crazy.  Okay.  You would tell me I was trying to railroad you.  Okay.  You know, if – if that was the situation.  Okay.

That's how bad the appearance of this thing is.  Okay.  And it really raises the question of whether, you know, you think you know all the consequences of all of this and, you know, you think you know what the problems are.  And again we are all – as the Supreme Court said, we can all make guesses in the dark here as to what can come up that can be problems.

But you are sitting here telling me, "I don't care. I'm not worried about any of that. I want Mr. Smith to represent me." And I have to decide whether I agree to let you do that.

And the Court and other – as noted in the one quote I read, your right to have a lawyer of your own choosing is a very important right. And the Court – the Court must consider that; that that's your wish, in spite of all these other things; that it's your wish to have him represent you. And that's very important. That's a very important matter in all of these circumstances.

And I have to decide whether this is such a situation where I should honor your wishes or whether I should say, "You know what? This is just so bad that I cannot accept a waiver of the conflict of interest from the defendant." So that's what I'm faced with here this morning.

And first of all, my personal opinion is I think it's foolish for Mr. Smith to put himself in this position. I can't imagine any lawyer knowing all of these things that would want to continue to represent you in this matter. I would think it would be too great a burden of having to make that choice between whether I'm going to be worried about, you know, my familial loyalties, my blood loyalties and my loyalties to Mr. Henley and my representation to him. How am I ever going to resolve a conflict? That would always be in the back of my mind. And frankly, I cannot understand how Mr. Smith can say he doesn't think that's a problem. To me that's foolish.

To me it's foolish for you to take the chance in having him continue to represent you, knowing that all of these potential problems are out here and knowing that's always going to be a question in the case. It's always going to be, "Did that affect somehow the way he represented me in this case?" And again, as I said before, you are going to have – if you are found guilty in this case, you are going to have a long time sit there and think about that. Okay?

In hindsight, you know, sitting there then, you may have a different view than you have today. Okay. And to me, to my mind, that's foolish for you to take that chance. But I see people here every day making foolish decisions. Okay. I see people sitting here saying why in the world are they doing what they are doing. Okay. And it turns out that they were foolish for making the decisions that they did.

And, again, you are an educated man.  It's not like you are someone that doesn't have the ability themselves to figure these things out and understand what all these things are.  I'm not dealing with some 18-year-old kid here who may not, you know, know all the ins and outs of life's circumstances and all of that.  I'm dealing here with a mature, educated, literal individual who ought to be able to think all of these things through and make his own decision.

And likewise Mr. Smith.  Mr. Smith is a lawyer, a long-time practitioner.  He ought to be able to figure all of this stuff out himself.  He ought to have enough sense to be able to figure these things out.  And if the two of you, you know – it's like the preacher.  You know, two people come and want to get married and the preacher says, "Oh, I don't think this is going to work."  Okay.  "There are a lot of problems here is these people get married.  But they want to get married so be it."  Okay.

If the two of you all want to, you know, go down this, travel down this road together under all these circumstances, then my inclination is to let you do it.  But I want to make sure that you know what you are doing and you understand the consequences of the decision that you are making.  Because you are not going to be able to come back at some later point when you are sitting down there.  Again, you know, we are making certain assumptions here.  And they might not be accurate.  Okay.

As I said before, you know,  I – you may walk out the door at the end of all of this.  But if you don't, you know, when you are sitting in there, you are not going to be able to come back and say, "Well, hey, now I see the light."  Okay.  "Now I see what the problems were, and now I see why he didn't represent me the way he should have, and now I understand."

You are not going to be able to come back and do that.  Do you understand that?

HENLEY: Yes, I do.

THE COURT: And have you gone over all of these kinds of things with Mr. Smith?

HENLEY: Yes, sir.

THE COURT: **And knowing all of these things and all of these potential consequences, is it still your desire to have Mr. Smith represent you?**

HENLEY: **Absolutely.**

THE COURT: All right.  All right.  Well, I'm going to permit Mr. Smith to represent you, and we will go forward with him being your lawyer in this case.  Do you understand?

HENLEY: Yes, sir.

[Doc. 16-3 at 14-21] (emphasis added).  Nine days after trial began, Smith filed a motion to appoint counsel on Henley's behalf.  [Doc. # 1129 in Case No. 4:11CR246 CDP].   In the motion, Smith explained that he had been initially retained by Henley but the costs of representation greatly exceeded the estimated total amount of $25,000.  [*Id.*].  Smith indicated that while Henley had paid him approximately $27,000, he was without additional resources to continue paying Smith.  [*Id.*].  As a result, Smith requested that he be appointed to represent Henley under the Criminal Justice Act for the duration of the trial.  [*Id.*].

Henley filed an affidavit in support of the motion, and Judge Buckles held a hearing on the motion on November 2, 2012.  [Doc. # 1138 , # 1149, and # 1745 in Case No. 4:11CR246 CDP].   The trial had been going on for about two weeks at the time of the hearing.  Henley did not indicate any dissatisfaction with Smith's representation of him during the hearing and reiterated his continued desire for Smith to continue as his attorney.  [Doc. # 1745 in Case No. 4:11CR246 CDP].

Judge Buckles granted the motion on November 6, 2012.  [Doc. # 1160 in Case No. 4:11CR246 CDP].

The government called two witnesses (Allan Hunter and Walter Lee) to testify about Henley's participation in a conspiracy to murder several members of Outcast.  [Trial Transcript Vols. 17 and 19, Doc. # 1601 and # 1593 in Case No. 4:11CR246 CDP].   Smith's brother did not testify.  Smith extensively cross-examined both witnesses.  On the day the government rested its case-in-chief, Smith filed a motion for judgment of acquittal on Henley's behalf, which I denied.  [Doc. # 1191 in Case No. 4:11CR246 CDP].   I then inquired of each defendant, including Henley, whether he intended to testify on his own behalf.  Although Henley initially told me that he did not wish to testify, he changed his mind and testified on his own behalf.  [Tr. Transcript Vol. 20, Doc. # 1602 in Case No. 4:11CR246 CDP].   At the conclusion of the trial, Smith renewed his motion for judgment of acquittal, which I again denied.  Henley never raised the issue of a potential conflict of interest regarding Smith's representation of him during the entirety of the trial.  The jury returned its verdict against Henley on December 7, 2012.  The jury found Henley guilty of racketeering conspiracy and conspiracy to commit murder in aid of racketeering, but it acquitted him on one count of violent crime in aid of racketeering – murder and one count of discharge of a firearm in furtherance of a violent crime.  [Doc. # 1230 in Case No. 4:11CR246 CDP].    Had

Henley been convicted of violent crime in aid of racketeering – murder, he would have been subject to a mandatory term of life imprisonment without the possibility of parole.

On December 13, 2012, Smith filed a post-verdict motion for acquittal on the charge accusing Henley of conspiring to murder Outcast members. [Doc. # 1249 in Case No. 4:11CR246 CDP].   I denied the motion.  [Doc. # 1362 in Case No. 4:11CR246 CDP].   In his objections to the presentence investigation report, Smith again argued that Henley had no knowledge of a conspiracy to murder Outcast members.  [Doc. # 1376 in Case No. 4:11CR246 CDP].   Smith also filed a sentencing memorandum on Henley's behalf in which he argued for a below guidelines sentence because Henley was wrongfully convicted of conspiring to murder Outcast members.  [Doc. # 1409 in Case No. 4:11CR246 CDP].   Smith requested a ten-year sentence.  [*Id.*].  In contrast, the government moved for an upward departure because death resulted from Henley's conduct.  [Doc. # 1404 in Case No. 4:11CR246 CDP].

Henley appeared before me for sentencing on April 14, 2013.  [Doc. # 1447 in Case No. 4:11CR246 CDP].   Smith called four witnesses to testify on Henley's behalf.  [Doc. # 1454 in Case No. 4:11CR246 CDP].   These witnesses testified favorably for Henley and requested leniency.  [*Id.*].  Smith also submitted numerous letters written on Henley's behalf by his family members and friends.

14

[Doc. # 1461 in Case No. 4:11CR246 CDP].    During the sentencing hearing,
Smith objected to the inclusion of the conspiracy to commit murder charge in
calculating Henley's sentence.  [Doc. # 1604 at 39-42 in Case No. 4:11CR246
CDP].    I overruled the objection, but granted Henley's objection to the inclusion
of an enhancement based upon an aggravating role in the conspiracy to commit
murder.  [*Id.* at 53].   I then calculated the advisory sentencing guidelines range to
be 188-235 months.  [*Id.* at 54].  Although I concluded that Henley was responsible
for the death of Kevin Berry, I denied the government's motion for upward
departure and instead sentenced Henley to a term of imprisonment of 204 months,
which was well within the advisory guidelines range.  [*Id.* at 105].

Smith appealed Henley's conviction and sentence to the Eighth Circuit.  He
assisted in authoring the joint appellate brief filed on behalf of Henley and all
appealing co-defendants, and he also filed a separate brief on behalf of Henley.  On
appeal, Smith argued that I should have granted Henley's motions for acquittal.
After the Eighth Circuit affirmed Henley's conviction and sentence, *see United
States v. Henley*, 766 F.3d 893, 908 (8th Cir. 2014), Smith participated in the
jointly filed petition for writ of certiorari, which was denied by the Supreme Court
on May 4, 2015.

Henley is now represented by a different retained attorney and argues that he
is entitled to post-conviction relief because Smith rendered ineffective assistance

of counsel by failing to adequately advise him of his conflict.  As discussed below, this claim is conclusively refuted by the record in this case.

## Discussion

### A. No Evidentiary Hearing is Required

The records before me conclusively demonstrate that Henley has no right to relief.  I will not hold an evidentiary hearing on this matter.  "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted).  "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Id.* (internal quotation marks and citations omitted).  The record here conclusively refutes the claims, so I will not hold an evidentiary hearing.

### B. Henley Did Not Receive Ineffective Assistance of Counsel

Henley claims that Smith's familial relationship created a conflict of interest and resulted in Smith rendering ineffective assistance of trial counsel.  The conflict identified in this case was one of attorney self-interest, in that Smith's relationship with his brother had the potential to impair his ability to represent Henley.  "In this circuit, it is unclear whether this sort of alleged conflict of interest requires a

16

defendant to show deficient performance and prejudice under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), or whether it is sufficient for a defendant to show that a conflict of interest 'adversely affected his lawyer's performance,' *see Caban v. United States*, 281 F.3d 778, 781-84 (8th Cir. 2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980))." *United States v. Sharp*, 879 F.3d 327, 333 (8th Cir. 2018). The Eighth Circuit has declined to decide whether the *Strickland* or the *Cuyler* standard applies where a movant's claim fails under both. *Id.* Because Henley's claim fails under either standard, I will adopt the Eighth Circuit's approach and apply both.

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "'A non-indigent criminal defendant's Sixth Amendment rights encompass the right to be represented by the attorney selected by the defendant.'" *United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006) (quoting *United States v. Gonzales-Lopez*, 399 F.3d 924, 928 (8th Cir. 2005)). The general rule is that "defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice." *Id.* (internal quotations and citations omitted). However, "the right to retain counsel of one's choice is not absolute." *Id.* (internal quotations and citations omitted). "The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when

17

counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial." *Bonin v. California*, 494 U.S. 1039, 1044, (1990).  Thus, the "Supreme Court has recognized that the right to counsel guaranteed by the Sixth Amendment includes the 'right to representation that is free from conflicts of interest.'" *Atley v. Ault*, 191 F.3d 865, 869 (8th Cir. 1999) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).  When an attorney has a conflict of interest, that attorney violates his duty of loyalty to his client and "fails to provide effective assistance of counsel." *Id.*

To state a claim for ineffective assistance of counsel under *Strickland*, Henley must prove two elements of the claim.  First, he "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.*  Second, Henley "must show that the deficient performance prejudiced the defense." *Id.* at 687.  This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

at 694.  The court need not address both components if the movant makes an insufficient showing on one of the prongs.  *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

Under *Cuyler*, to establish a violation of the Sixth Amendment "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."  446 U.S. at 348.  Henley must identify "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one."  *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004).  He must show that "the conflict caused the attorney's choice."  *Id.*  "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.  But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."  *Cuyler*, 446 U.S. at 349-50.

I must consider the impact of Henley's waiver on his ineffective assistance claim.  Although Henley admits that he waived his right to conflict-free counsel, he now argues that the waiver was involuntary because Smith had a conflict which obligated the Court to disqualify him.  "If the court discovers that the attorney suffers from a severe conflict — such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation — the court is

obligated to disqualify the attorney." *Edelmann*, 458 F.3d at 807 (internal quotations and citations omitted). "If the conflict is only a potential conflict — 'such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation' — the court should obtain from the defendant a valid waiver of his right to a non-conflicted lawyer." *Id.* (internal quotations and citations omitted). When the court asks the defendant whether he will waive the conflict, the defendant "must be aware of the conflict, realize the consequences to his defense that continuing with counsel under the onus of a conflict could have, and also be aware that he has the right to obtain other counsel." *Id.* (internal quotations and citations omitted). "Because a defendant may waive his right to counsel, the defendant may also waive the right to counsel free from serious conflicts of interest." *Id.*

Henley has presented no evidence of an actual conflict of interest in this case, and it is his burden to do so. To demonstrate an actual conflict, Henley must show "a conflict of interest that adversely affects counsel's performance. The effect must be actual and demonstrable, causing the attorney to choose to engage or not to engage in particular conduct." *Noe v. United States*, 601 F.3d 784, 790 (8th Cir. 2010) (internal quotations and citations omitted). "To make such a showing, the defendant must identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy

was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Id.* (internal citations and quotations omitted).

Henley offers no proof on this issue, arguing only that Judge Buckles must have found an actual conflict because of his dire warnings to Henley about the potential consequences of continuing with the representation. Henley is wrong. Judge Buckles, after extensive hearings on this issue, found only a potential conflict of interest, a finding which is conclusively supported by the record and not contradicted by anything in Henley's § 2255 motion. Smith vigorously defended Henley throughout the entirety of the case, filing numerous motions on his behalf before, during, and after trial. He extensively cross-examined the government's witnesses about the January 29, 2001 incident involving Outcast members and repeatedly argued for Henley's acquittal during and after trial on the charge stemming from that night, contending that these witnesses lacked credibility and that Henley lacked the requisite knowledge to be held responsible. Henley identifies no "plausible alternative strategy" that Smith could or should have used in defending him on the conspiracy charge, or any of the other charges. Henley's complete failure of proof is underscored by the fact that he took the stand and admitted that he was present at the January 29, 2001 incident, but did not know what other members of his motorcycle club were planning. Given the testimony of

21

the government's witnesses and Henley's own admissions, Smith's strategy seemed to be the *only* reasonable defense tactic available, and Henley's failure to identify another is fatal to his claim.  Moreover, what Henley completely omits from his discussion is that Smith's trial strategy was effective in securing his acquittal on the charge of violent crime in aid of racketeering – murder, a charge which carried a mandatory term of imprisonment of life without the possibility of parole.

The record conclusively demonstrates that Henley knowingly and voluntarily waived any potential conflict of interest his attorney may have had in representing him after being fully advised by his attorney and the Court of all the attendant risks, and he cannot now contradict his numerous statements made previously to the Court on the record and under oath.  Henley is an intelligent man and was fully advised of his attorney's potential conflict of interest and its possible consequences, both by Smith and the Court, and he made a voluntary, strategic decision to waive that conflict and proceed to trial with the retained counsel of his choice.  Even when Henley needed appointed counsel, he requested the Court allow Smith to continue representing him.  Henley never complained about Smith's representation of him during the trial, despite being aware of the potential conflict, and he offers no new or previously unknown information to support his claim now.  Instead, as predicted by Judge Buckles, Henley is simply second-

guessing his decision to keep Smith as his attorney.  But Henley cannot blame his attorney or the Court for a choice he knowingly made.  This choice worked to his benefit, as Smith secured an acquittal for Henley on two counts, including one which carried a mandatory life sentence.

Having knowingly and voluntarily waived his right to conflict-free counsel, Henley can only succeed in his ineffective assistance of counsel claim if he can demonstrate that Smith had a conflict of interest which meets the standards of either *Cuyler* or *Strickland*.  He cannot.  I presided over the entirety of this case, including the lengthy trial, and heard the testimony of all the witnesses and reviewed the hundreds of exhibits that were introduced during trial.  As such, I am familiar with the trial strategies used by the government and the defense counsel, including Smith, and am in the best position to assess counsel's performance. When assessing the merits of Henley's claims, I take into consideration the case as a whole and the substantial evidence presented at trial to prove Henley's guilt.  It must also be emphasized that, while Henley was ultimately convicted of conspiring to murder Outcast members, Smith's brother was not a witness at trial or identified as a specific target of the January 29, 2011 incident.

As I have just discussed above, Henley cannot meet the standard of *Cuyler* because he has not met his burden to show that an actual conflict of interest existed.  And Henley cannot meet either prong of the *Strickland* standard, either.

Once again, Henley offers no evidence that Smith's performance was constitutionally defective.   As there was no actual conflict of interest and Henley was fully and properly advised of counsel's potential conflict before voluntarily deciding to waive it, Henley cannot demonstrate that Smith's representation was ineffective with respect to the waiver issue.  Henley does not point to any other alleged errors made by Smith during the course of the trial.  Although Henley complains in passing that Smith "only" called one witness (Henley himself), he does not identify any other witnesses that should have been called or what their testimony might have been.  Moreover, most defendants called either one or no witnesses, and there was nothing unusual or ineffective about Smith's decision to do the same.

Nor has Henley offered any evidence of prejudice resulting from Smith's alleged errors.  As repeatedly emphasized, Smith's effective cross-examination of the government's witnesses secured an acquittal for Henley on the most serious charge and one other.  Henley does not identify how the result of his trial would have been different but for Smith's alleged errors.  The evidence of Henley's guilt was overwhelming, and but for Smith's vigorous and able defense Henley might well be serving a life sentence.  That he is not is a testament to his attorney's proficient – not deficient – performance, and any suggestion that Henley received ineffective assistance of counsel is conclusively refuted by the record in this case.

As Henley has failed to meet either the *Cuyler* or *Strickland* standards, his ineffective assistance of counsel claim fails.

### D. I Will Not Issue a Certificate of Appealability

As Henley has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Dominic Henley's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Henley has not made a substantial showing of the denial of a federal constitutional right.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of April, 2018.

25

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| DOMENIC HENLEY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 626 CDP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## JUDGMENT

**IT IS HEREBY ORDERED** that Domenic Henley's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability because movant has not made a substantial showing of a denial of any constitutional right.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of April, 2018.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIC HENLEY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-626-CDP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>NOTICE OF APPEAL</u>

Dominic Henley ("Henley"), hereby gives notice of appeal from the

Court's Memorandum and Order (Docket Entry 20) denying Henley's motion

under 28 U.S.C. § 2255, to the United States Court of Appeals for the Eighth

Circuit.

Respectfully submitted,

/s/ Jeremy Gordon
Jeremy Gordon
Jeremy Gordon, PLLC
1848 Lone Star Road, Suite 106
Mansfield, TX 76063
Tel: 972-483-4865
Fax: 972-584-9230
Email: Jeremy@gordondefense.com
TX Bar No. 24049810

*Counsel Pro Hac Vice for Henley*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was duly served on all attorneys of record via the Court's CM/ECF system this 15th day of June, 2018.


/s/ Jeremy Gordon

2

US Court of Appeals - Eighth Circuit
NOA Supplement

Caption:                                                    USCA#: _____

  Henley v. USA

Case Number:

  4:16cv626 CDP

Plaintiff:                              Defendant:

  **Dominic Henley**                     **United States of America**

Attorney:                               Attorney:

Jeremy B. Gordon                        Sirena M. Wissler
JEREMY GORDON, PLLC                     OFFICE OF U.S. ATTORNEY
1848 Lone Star Rd.                      111 S. Tenth Street
Suite 106                               20th Floor
Mansfield, TX 76063                     St. Louis, MO 63102
972-483-4865                            314-539-7670
Fax: 972-584-9230                       Fax: 314-539-2312
Email: jeremy@gordondefense.com         Email: sirena.wissler@usdoj.gov

Court Reporter:                         Please return files and documents to:

                                        Clerk, Eastern District of Missouri

                                        Person to contact about the appeal::

                                        Beth Kirkland   244-7925
NONE

| Length of trial: | Fee: | IFP: | Pending IFP Motion: |
|---|---|---|---|
| N/A | PAID | N/A | N/A |

| Counsel: | Pending Motions: | Local Interest: | Simultaneous Release: |
|---|---|---|---|
| JEREMY GORDON | NONE | N/A | N/A |

Criminal Cases/Prisoner Pro Se Cases Only:

  Is defendant incarcerated?    Yes    No    Where: [                    ]

Please list all other defendants in this case if there were multiple defendants: